UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRANCH BANKING AND TRUST
COMPANY, a North Carolina banking
corporation, as successor-in-interest to
Colonial Bank by asset acquisition from
the FDIC as Receiver for Colonial Bank

      Plaintiff,

v.                                 Case No: 2:13-cv-373-FtM-38CM

DAVID D'AMORE and PAMELA
D'AMORE,

      Defendants.
_____/

## **ORDER**[1]

This matter comes before the Court on Plaintiff Branch Banking and Trust Company's Motion for Final Summary Judgment (Doc. 53) filed on May 15, 2014. The D'Amore Defendants filed a response in opposition (Doc. 65) on June 5, 2014. With leave from the Court, Plaintiff filed a reply and Defendants filed a sur-reply (Doc. 69; Doc. 70) on June 16, 2014, and June 23, 2014, respectively. This matter is now ripe for review.

### Undisputed Facts

On January 26, 2004, Triple D Investment Group, LLC executed and delivered to Colonial Bank an initial promissory note in the principal amount of $2,860,000.00. (Doc.

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

53-1, at 10; Exh. A).[2] This note was secured by a mortgage among other things. (Doc. 53-1, at 13; Exh. A). Then on April 26, 2009, Triple D Investment Group executed and delivered to Colonial Bank a substituted renewal mortgage note ("Triple Note") in the same $2,860,000.00 principal amount. (Doc. 53-1, at 17; Exh. B). Defendants David D'Amore and Pamela D'Amore absolutely and unconditionally guaranteed this Triple Note loan. (Doc. 53-1; Pratt Aff. at ¶¶23-26; Doc. 53-1, at 54; Exh I; Doc. 53-1, at 64; Exh. K). That is, the D'Amore Defendants promised to pay all amounts due under the Triple Note upon a default. (Doc. 53-1, at 55; Exh. I; Doc. 53-1, at 65; Exh. K) ("This Guaranty is an absolute, unconditional, and continuing guaranty of the full and punctual payment and performance by Borrower of the Obligations and not of their collectability only, and is in no way conditioned upon any requirement that Lender first attempt to collect any of the Obligations from Borrower or any other party primarily or secondarily liable with respect thereto or resort to any security or other means of obtaining payment of any of the Obligations which Lender now has or may acquire after the date hereof, or upon any other contingency whatsoever."). Thereafter, in October 2009, Plaintiff Branch Banking and Trust Company ("BB&T") acquired Colonial Bank's assets from the Federal Deposit Insurance Corporation ("FDIC"). (See Doc. 53-2; Hicks Aff. at ¶9).

Triple D Investment Group defaulted on the Triple Note by failing to pay BB&T the monthly payment that became due on February 26, 2013, and all amounts due thereafter. (Doc. 53-1; Pratt Aff. at ¶7; see also Doc. 53-1, at 17; Exh. B). Due to Triple D Investment Group's default, BB&T elected to accelerate and declare immediately due and owing the entire unpaid balance along with accrued interest and late charges. (Doc. 53-1; Pratt Aff.

---

[2] The documents were signed by Defendant David D'Amore as a Managing Member of Triple D. Investment Group, LLC. (See Doc. 53-1, at 10; Exh. A).

at ¶9; see Doc. 53-1, at 17; Exh. B ("if any default occurs . . . the holder hereof may, in addition, declare the entire unpaid balance of said principal sum, with interest accrued thereon and all other sums due from [Triple] hereunder and under the Mortgage to be immediately due and payable.")). BB&T has demanded Triple D Investment Group to pay the amounts due and owing but Triple D Investment Group has failed to comply with this demand. (Doc. 53-1; Pratt Aff. at ¶11). As a result of the default, $3,222,668.06, as of May 9, 2014, plus per diem default rate of interest of $1,511.32 accruing thereafter is due and owing.[3] (Doc. 53-1; Pratt Aff. at ¶10).

Also, on March 1, 2005, Investment Properties of Charlotte, Inc. executed and delivered to Colonial Bank a promissory note in the principal amount of $715,000.00. (Doc. 53-1, at 29; Exh. D). Then on March 1, 2008, Investment Properties of Charlotte executed and delivered to Colonial Bank a renewal promissory note in the principal amount of $500,000.00. (Doc. 53-1, at 34; Exh. E). Thereafter, on March 25, 2011, and after BB&T acquired Colonial Bank's assets from the FDIC, Investment Properties of Charlotte executed and delivered to BB&T an additional renewal promissory note in the principal amount of $404,645.12 ("Investment Note"). (Doc. 53-1, at 39; Exh. F). Defendants David D'Amore and Pamela D'Amore guaranteed this Investment Note absolutely and unconditionally. (Doc. 53-1, at 59, Exh. J; Doc. 53-1, at 69; Exh. L). That is, these Defendants promised to pay all amounts due under the Investment Note upon a

---

[3] Pursuant to the Triple Note, BB&T asserts Triple now owes BB&T $2,590,844.73, interest at the contractual rate in the amount of $53,893.81 through May 13, 2013, plus interest at the default rate in the amount of $544,077.39 from May 14, 2013 through May 9, 2014, late fees in the amount of $14,412.84, protective advance for payment of 212 real estate taxes in the amount of $1,439.29, April 22, 2013 appraisal fees of $950.00, June 13, 2013 appraisal fees of $6,750.00, March 25, 2014 appraisal fees of $1,450.00, and property consultant fees of $8,850.00, for a total amount due in the amount of $3,222,668.06 as of May 9, 2014, plus per diem default rate of interest of $1,511.32 accruing thereafter. (See Doc. 53-1; Pratt Aff. at ¶10).

3

default to BB&T. (Doc. 53-1, at 60; Exh. J; Doc. 53-1, at 70; Exh. L). ("the Bank will not be required first to resort to the Borrower or any other maker, endorser, surety, guarantor, or other Guarantor (each such Borrower, maker, endorser, surety, guarantor, or other Guarantor being hereinafter individually called an 'Obligor') or to the security pledged or granted to it by any instrument or agreement, or otherwise assigned or conveyed to it, but in case of default in the payment of any of the Liabilities the Bank may forthwith look to the Guarantors jointly and severally for payment under the provisions hereof.").

Investment Properties of Charlotte defaulted on the Investment Note by failing to pay BB&T the monthly payment that became due on April 3, 2013, and all amounts thereafter. (Doc. 53-1; Pratt Aff. at ¶15; see also doc. 53-1, at 39; Exh F). Due to this default, BB&T elected to accelerate and declare immediately due and owing the entire unpaid balance along with accrued interest and late charges. (Doc. 53-1; Pratt Aff. at ¶17; see doc. 53-1, at 39; Exh F ("In case of a default . . . the legal holder thereof may . . . declare the entire debt then remaining unpaid immediately due and payable.")). BB&T has demanded Investment Properties of Charlotte to pay the amounts due and owing but Investment Properties of Charlotte has failed to comply with this demand. (Doc. 53-1; Pratt Aff. at ¶19). As a result of the default, $351,413.73, as of May 9, 2014, plus per diem default rate of interest of $144.89 accruing thereafter is due and owing.[4] (Doc. 53-1; Pratt Aff. at ¶18).

---

[4] Pursuant to the Investment Note, BB&T asserts Investment Properties of Charlotte now owes $289,777.35 as of May 9, 2014, interest at the contractual rate in the amount of $4,286.29 through May 13, 2013, plus interest at the default rate in the amount of $52,159.92 from May 14, 2013 through May 9, 2014, late fees in the amount of $3,160.17, returned payment fees of $30.00, May 6, 2013 appraisal fees of $1,050.00, and March 18, 2014 appraisal fees of $950.00, for a total amount due in the amount of $351,413.73 as of May 9, 2014, plus per diem default rate of interest of $144.89 accruing thereafter.

Accordingly, BB&T has brought this action to enforce the terms and conditions of the D'Amore Defendants guaranty agreements of the Triple Note and Investment Note. There are four counts from the Amended Complaint that remain in this action. ([Doc. 24](#)). The remaining four counts are: Action on Guaranty against David D'Amore – Triple Note (Count III); Action on Guaranty against David D'Amore – Investment Note (Count IV); Action on Guaranty against Pamela D'Amore – Triple Note (Count V); and Action on Guaranty against Pamela D'Amore – Investment Note (Count VI). BB&T has moved for summary judgment on the remaining counts and the D'Amore Defendants oppose.

**Standard**

Summary judgment is appropriate only when a court is satisfied that "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. [Fed. R. Civ. P. 56(a)](#). An issue is genuine if there is sufficient evidence such that a reasonable jury could return a verdict for either party. [Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)](#). Similarly, an issue is material if it may affect the outcome of the suit under governing law. [Id.](#)

The moving party bears the burden of showing the absence of any genuine issue of material fact. [Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)](#). In deciding whether the moving party has met this initial burden, the Court must review the record and all reasonable inferences drawn from the record in the light most favorable to the non-moving party. [Whatley v. CNA Ins. Co., 189 F.3d 1310, 1313 (11th Cir. 1999)](#). Once a court determines that the moving party has met its burden, the burden shifts and the non-moving party must present specific facts showing that there is a genuine issue for trial that precludes summary judgment. [Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,](#)

475 U.S. 574, 587 (1986). "The evidence presented cannot consist of conclusory allegations, legal conclusions or evidence which would be inadmissible at trial." Demyan v. Sun Life Assurance Co. of Canada, 148 F. Supp. 2d 1316, 1320 (S.D. Fla. 2001) (citing Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991)). Failure to show sufficient evidence of any essential element is fatal to the claim and the Court should grant the summary judgment. Celotex, 477 U.S. at 322-23. Conversely, if reasonable minds could find a genuine issue of material fact then summary judgment should be denied. Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1532 (11th Cir. 1992). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

## Discussion

This action was brought pursuant to diversity jurisdiction and is governed by Florida law. (See e.g., Doc. 53-1, at 73; Exh. L) ("This agreement shall be governed by, and construed in accordance with, Florida law."); see also Doc. 53-1, at 57; Exh. I; Doc. 53-1, at 63; Exh J; Doc. 53-1, at 67; Exh K). Guaranty contracts are collateral promises to answer for the debt or obligation of another. Palm Beach Strategic Income, LP v. 358 1276 Canada Inc., No. 08-80186-CIV, 2009 WL 7466346, at *5 (S.D. Fla. Feb. 10, 2009) (citing Lockheed Martin Corp. v. Galaxis USA, Ltd., 222 F. Supp. 2d 1315, 1325 (M.D. Fla. 2002) (citing FDIC v. Univ. Anclote, Inc., 764 F.2d 804, 806 (11th Cir. 1985))). In Florida, guaranty agreements are governed by contract law. Palm Beach Strategic Income, 2009 WL 7466346, at *5 (citing Lockheed Martin Corp., 222 F.Supp. 2d at 1325)). Thus, to prove a breach of a guaranty agreement, a party must prove there is a valid

contract, there has been a material breach of the contract, and as a result there are damages. Palm Beach Strategic Income, 2009 WL 7466346, at *5 (citing J.J. Gumberg Co. v. Janis Servs., Inc., 847 So.2d 1048, 1049 (Fla. 4th DCA 2003)); see also Rossi v. Pocono Point, LLC, No. 6:08-cv-750-Orl-28KRS, 2009 WL 435064, at *4 (M.D. Fla. Feb. 20, 2009) (citing Brunswick Corp. v. Creel, 471 So.2d 617, 618 (Fla. 5th DCA 1985)). Where the language within the guaranty contract is unambiguous, the legal effects of that language is a question of law that can be declared by the court. Palm Beach Strategic Income, 2009 WL 7466346, at *5 (citing Maccaferri Gabions, Inc. v. Dynateria Inc., 91 F.3d 1431, 1439 (11th Cir. 1996)). The creditor has the burden of establishing that all of the conditions to the guarantor's liability have been met. Rossi, 2009 WL 435064 at *4 (citing Alderman Interior Sys., Inc. v. First Nat'l-Heller Factors, Inc., 376 So.2d 22, 23 (Fla. 2d DCA 1979)).

BB&T asserts the undisputed facts entitle the granting of summary judgment in its favor. Specifically, BB&T asserts (1) Defendants signed unconditional guaranties to repay the full indebtedness now due and owing under the Triple Note and Investment Note; (2) these two notes are now in default; and (3) BB&T is entitled to enforce the terms and conditions of the guaranties.

In response, the D'Amore Defendants do not question whether they absolutely guaranteed the Triple Note and Investment Note or whether the two notes are now in default. Instead, the D'Amore Defendants assert it is unclear to them whether BB&T is entitled to enforce the terms and conditions of the guaranties because they have only seen copies of the notes rather than the original documents, presumably since the inception of this case. Thus, it is unclear to the D'Amore Defendants if BB&T is the owner

and holder of the notes. The D'Amore Defendants assert an affidavit of ownership of a true and correct copy of the notes is not sufficient for this summary judgment stage because this evidence is not admissible. The D'Amore Defendants also assert BB&T has not pursued a claim to reestablish the lost notes.

The Court finds the arguments presented by the D'Amore Defendants miss the mark and are unpersuasive. The notes are not lost. BB&T has the notes. Therefore, BB&T does not need to pursue a claim to reestablish lost notes. In fact, if necessary, BB&T is willing to provide the Court with the original notes.

In addition, BB&T's affidavit with regard to its ownership of the notes is sufficient for this stage of the litigation. The law in Florida is clear. "If the note does not name the plaintiff as the payee, the note must bear a special endorsement in favor of the plaintiff or a blank endorsement." McLean v. JP Morgan Chase Bank Nat'l Ass'n, 79 So.3d 170, 173 (Fla. 4th DCA 2012) (citing Servedio v. U.S. Bank Nat'l Ass'n, 46 So.3d 1105, 1106-07 (Fla. 4th DCA 2010); Riggs v. Aurora Loan Servs., LLC, 36 So.3d 932, 933 (Fla. 4th DCA 2010)). In the alternative, "the plaintiff may submit evidence of an assignment from the payee to the plaintiff or an affidavit of ownership to prove its status as a holder of the note." McLean, 79 So.3d at 173. (citing Servedio, 46 So.3d at 1107); see also Gee v. U.S. Bank Nat'l Ass'n, 72 So.3d 211, 213 (Fla. 5th DCA 2011) ("Alternatively, the plaintiff may submit evidence of an assignment from the payee to the plaintiff or an affidavit of ownership to prove its status as a holder of the note.") (citing Verizzo v. Bank of N.Y., 28 So.3d 976 (Fla. 2d DCA 2010); Stanley v. Wells Fargo Bank, 937 So.2d 708 (Fla. 5th DCA 2006)). BB&T has provided an affidavit and exhibits that the Court finds are

admissible and sufficient to prove BB&T is the holder and owner of the underlying Triple Note and Investment Note.

Moreover, this action is not to foreclose on any property but instead is to enforce the guaranty agreements brought pursuant to the Triple Note and Investment Note. This distinction is significant. BB&T has a right to seek redress pursuant to the unconditional guaranty agreements independent from its right to seek redress on the mortgage secured by the underlying Triple Note and Investment Note. See Gottschamer v. August, Thompson, Sherr, Clark &Shafer, P.C., 438 So.2d 408, 409 (Fla. 2d DCA Sept. 2, 1983); see also Anderson v. Trade Winds Enters. Corp., 241 So.2d 174, 177 (Fla. 4th DCA 1970) ("Where the guaranty is absolute, the guarantor becomes liable upon non-payment by the principal, and the person in whose favor the guaranty runs has no duty to first pursue the principal before resorting to the guarantors.") (citation omitted). Here, since the Court is not foreclosing a property and the guaranty agreements are unconditional, the Court does not need to obtain the original notes before entry of judgment. Thus, the D'Amore Defendants and the Court do not need to physically see the original Triple Note and Investment Note before summary judgment is entered on the breach of the guaranty agreements.

The record evidence is clear. BB&T is the holder and owner of the Triple Note and Investment Note. BB&T acquired Colonial Bank's assets through the FDIC. (Doc. 53-1, at 23; Exh. C). Accordingly, BB&T became the owner and holder of the Triple Note and its guaranty agreements. See New Holland, Inc. v. Trunk, 579 So.2d 215, 218 (Fla. 5th DCA 1991) ("There is a principle of law that the assignment of a principal obligation also operates as an assignment of the guaranty of the obligation so that the guaranty is

effective to collect the obligation which existed at the time of the assignment.") (citation omitted). Also, the Investment Note and the D'Amore Defendants guaranty agreements to the Investment Note were eventually entered with BB&T outright. (See [Doc. 53-1, at 39](); Exh. F; [Doc. 53-1, at 59](); Exh. J; [Doc. 53-1, at 69](); Exh. L). Accordingly, BB&T has standing and the power to enforce the Triple Note, Investment Note, and the corresponding guaranty agreements. [Mortg. Elec. Registration Sys., Inc. v. Azize, 965 So.2d 151, 153 (Fla. 2d DCA 2007)]() ("The holder of a note has standing to seek enforcement of the note.").

In conclusion, the Court finds there are no material disputes. The guaranty agreements are valid contracts. These agreements were materially breached. As a result, BB&T has suffered damages; the amount of which is not contested by the D'Amore Defendants. BB&T is the owner and holder of the Triple Note and Investment Note and the corresponding guaranty agreements. BB&T has standing to pursue its claims. The record evidence supports the entry of summary judgment in favor of BB&T and against the D'Amore Defendants.

Accordingly, it is now

**ORDERED:**

1. Branch Banking and Trust Company's Motion for Final Summary Judgment ([Doc. 53]()) is **GRANTED**.

2. The Clerk is directed to enter judgment in favor of Plaintiff Branch Banking and Trust Company and against Defendants David D'Amore and Pamela D'Amore as to Counts III, IV, V, and VI. Pursuant to Counts III and V, the guaranty agreements on the Triple Note, the D'Amore Defendants jointly and severally

owe $3,222,668.06, as of May 9, 2014, plus per diem default rate of interest of $1,511.32 accruing. Pursuant to Counts IV and VI, the guaranty agreements on the Investment Note, the D'Amore Defendants jointly and severally owe $351,413.73, as of May 9, 2014, plus per diem default rate of interest of $144.89 accruing thereafter.

3. The Clerk is directed to deny all pending motions as moot and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida this 22nd day of July, 2014.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record